UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
MOLLY COHEN,

                Plaintiff,

      -against-

INTEGRATED PROJECT DELIVERY PARTNERS
INC. and DAVID SILVERSTEIN, *in both his individual
and professional capacities*,

                Defendants.
------------------------------------- x



MEMORANDUM DECISION
AND ORDER

18 Civ. 2581 (GBD) (DCF)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Molly Cohen brings this employment discrimination action against Defendants Integrated Project Delivery Partners Inc. ("IPD") and David Silverstein, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"), New York State Human Rights Law, N.Y. Exec. Law §§ 290–301, ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–8-131 ("NYCHRL"). (First Am. Compl. ("FAC"), ECF No. 31.)[1] Specifically, Plaintiff alleges that Silverstein, the Chief Executive Officer of IPD, terminated Plaintiff from the company based on her known relationship and association with individuals with disabilities—that is, her parents. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of all of Plaintiff's claims. (Notice of Mot., ECF No. 61.) Defendants' motion for summary judgment is DENIED.

## I.    FACTUAL BACKGROUND

Silverstein hired Plaintiff on September 11, 2017 to work for IPD as an Assistant Project Manager. (Defs.' Local Rule 56.1 Statement of Material Undisputed Facts ("Defs.' Rule 56.1

---

[1] By written stipulation dated May 21, 2019, Plaintiff withdrew her separate cause of action for discrimination in violation of the Rehabilitation Act. (Stipulation, ECF No. 58.)

Statement"), ECF No. 62, ¶ 10; Pl.'s Local Rule 56.1 Counterstatement ("Pl.'s Rule 56.1 Statement"), ECF No. 67, at 13.) Plaintiff was also involved with assisting Silverstein with a cosmetics line that he was developing. (Defs.' Rule 56.1 Statement ¶ 19; Pl.'s Rule 56.1 Statement at 24.)

According to Defendants, Plaintiff began exhibiting performance issues shortly after she was hired. (Defs.' Rule 56.1 Statement ¶ 15.) In particular, she allegedly arrived to work late, habitually missed parts of a weekly meeting, and failed to maintain organized work space and files for projects to which she was assigned. (*Id.* ¶¶ 15–16.) Defendants assert that Silverstein "consistently" and "on a rolling basis" offered Plaintiff constructive criticism and feedback about such performance issues. (*Id.* ¶ 17.) Plaintiff, on the other hand, claims that she "received praise for her work throughout her tenure at IPD." (Pl.'s Rule 56.1 Statement at 18.)

On December 21, 2017, Silverstein met with Plaintiff to discuss her year-end evaluation and performance review. (Defs.' Rule 56.1 Statement ¶ 23; Pl.'s Rule 56.1 Statement at 27.) Defendants claim that at this meeting, Silverstein provided both positive feedback and constructive criticism, (Defs.' Rule 56.1 Statement ¶ 24), including that Plaintiff needed to improve her "punctuality, organization skills, and follow-up with clients/contractors," (*id.* ¶ 25). Plaintiff contends that the only constructive criticism that Silverstein offered during her review was about her punctuality. (Pl.'s Rule 56.1 Statement at 28.)

According to Plaintiff, she disclosed to Silverstein during their meeting that her parents "are both sick and require care." (*Id.* at 45 (quoting Decl. of Alex J. Hartzband ("Decl."), Ex. 2 (Pl.'s Dep. Tr.), ECF No. 67-2, at 120:11).) She asserts that she told him that her mother "has a

2

condition, has MS, and it makes it difficult [for her mother] to be [her] father's primary caretaker, so that falls on [her] brother and [her]." (*Id.* (quoting Decl., Ex. 2 (Pl.'s Dep. Tr.), at 120:12–15).)

During the meeting, Silverstein and Plaintiff also discussed holiday plans for the upcoming week. (Defs.' Rule 56.1 Statement ¶ 30; Pl.'s Rule 56.1 Statement at 34.) Defendants claim that Plaintiff asked whether IPD's office would be open between December 26, 2017 and December 29, 2017, and that Silverstein confirmed that the office would be open, and that Plaintiff was expected to work on those days. (Defs.' Rule 56.1 Statement ¶¶ 30–31.) They assert that Plaintiff never requested to take the holiday work week off, either during her review or afterwards, and that Silverstein never approved any such request. (*Id.* ¶¶ 34–35.) Plaintiff, on the other hand, contends that she never asked whether the office would be open or whether she was expected to work during those days. (Pl.'s Rule 56.1 Statement at 34.) Rather, she claims that she requested to take the entire week off "to be with [her] family and . . . have the opportunity to handle the care of [her] parents," and that Silverstein approved such request. (*Id.* (quoting Decl., Ex. 2 (Pl.'s Dep. Tr.), at 132:24–133:2).) Specifically, she testified at her deposition that she asked to have the entire week off, and that he responded, "No problem, just send me your schedule." (Decl., Ex. 2 (Pl.'s Dep. Tr.), at 162:13–23.)

Following her December 21 performance review, Plaintiff sent Silverstein an email, thanking him for meeting with her earlier that day, and stating that his "feedback has been extremely positive." (Decl., Ex. 7 (Emails), ECF No. 67-2, at PLAINTIFF 000219.) She stated in the email that, "[a]s [they] discussed, [she] need[s] to create a more positive work/life balance, where [she] can manage [her] personal responsibilities," and that "[b]ased on [their] earlier conversation, [she] want[s] to make sure [they are] aligned, relative to [her] personal and wellness needs." (*Id.*) Her email stated that she confirmed with a co-worker that certain work sites would

3

be closed on December 26, and that she "already planned on being out [on December 29], though [she could] be here [on December 27] and half of the day [on December 28] if necessary." (*Id.* at PLAINTIFF 000219–20.) She then stated:

> As I try to handle this in the most mature and responsible way possible, I know I will soon regret not having as much time as possible with my family, as it's more serious than I allow myself to express, being that my intention is to show my responsibility and commitment to the company and my role.

(*Id.* at 000220.)

Plaintiff claims that she sent Silverstein this email per his instructions and to confirm the time off. (Pl.'s Rule 56.1 Statement at 35.) She concedes that Silverstein did not respond to her email, but she insists that his decision not to respond was "consistent with his general practices regarding approvals of paid time off." (*Id.* at 41.) She testified at her deposition that she did not follow up with Silverstein because there was "no need," as the email was "a follow[-]up on [their] conversation" and "was just reiterating [their] conversation." (Decl., Ex. 2 (Pl.'s Dep. Tr.), at 162:7–10.) Meanwhile, Defendants contend that Plaintiff's email, which "laid out [Plaintiff's] proposed itinerary for the holiday work week and her plan to actually be present in the office," confirms her understanding that she was expected to work during the holiday week. (Defs.' Rule 56.1 Statement ¶ 33.)

On December 24, 2017, Silverstein sent Plaintiff a text message regarding an issue with the cosmetics line website. (*See id.* ¶ 37; Pl.'s Rule 56.1 Statement at 42.) The message, sent at 3:52 p.m., contained a screenshot of a web browser, followed by a question mark. (Decl., Ex. 10 (Text Messages), ECF No. 67-2, at PLAINTIFF 000216.) Plaintiff responded at 8:36 p.m., "Huh?

4

Is that through square space?" (*Id.*) Silverstein did not respond to Plaintiff's message. (Pl.'s Rule 56.1 Statement at 42.)

Plaintiff did not appear at work December 26, 2017 through December 28, 2017. (Defs.' Rule 56.1 Statement ¶ 36; Pl.'s Rule 56.1 Statement at 41.) On December 28, Silverstein terminated Plaintiff's employment via email, stating:

> You haven't shown up for work this week which excepting the office holiday was neither planned or approved. Quite honestly I cannot understand why you would unilaterally decide to take an unscheduled week off. I also brought to your attention a serious problem with the [cosmetics line] website, which after your failure to respond I ended up rectifying myself.

(Decl., Ex. 7 (Emails), at PLAINTIFF 000218.) He noted that during Plaintiff's performance review, he had explained that "the three areas [Plaintiff] needed to improve upon were [her] punctuality, organization skills and follow-up," and that she demonstrated during the holiday week "an apathetic excess of the very issues [he had] warned [her] to avoid." (*Id.*)

Plaintiff responded to Silverstein's email later that evening. (Decl., Ex. 12 (Emails), ECF No. 67-2, at PLAINTIFF 000222.) In her email, she stated that "there was clearly some misunderstanding in regards to [her] request to secure some additional time off this week." (*Id.*) She stated that she was "needed back in Florida to take care of both [her] parents," and that she had "chosen not to share the details of the care they require because [she] didn't deem it appropriate." (*Id.*) She continued:

> [I]t seems that my attempt to express the situation without full disclosure was inadequate. My father is suffering from Stage 4 Cancer of the throat and mouth, which has spread to his lung and spine, and my mother, who has Primary Progressive Multiple Sclerosis, is unable to be his primary caretaker.

(*Id.*)

Subsequently, on March 22, 2018, Plaintiff commenced this action, alleging that Defendants discriminated against her based on her relationship and association with her parents,

5

who suffer from recognized disabilities, by terminating her employment with IPD. (Compl., ECF No. 1.)

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

6

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHEN PLAINTIFF FIRST DISCLOSED HER PARENTS' DISABILITIES

To prevail on a claim for associational discrimination under the ADA, NYSHRL, or NYCHRL, Plaintiff must demonstrate, *inter alia*, that Defendants knew at the time of her termination that Plaintiff had a relative or an associate with a disability. *Simmons v. Woodycrest Ctr. for Human Dev., Inc.*, No. 10 Civ. 5193 (JSR), 2011 WL 855942, at *3 (S.D.N.Y. Mar. 9, 2011) (citations omitted).

Defendants move for summary judgment on all of Plaintiff's claims, arguing that the evidentiary record clearly establishes that neither Silverstein nor IPD was ever aware prior to her termination of her parents' disabilities. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."), ECF No. 63, at 1.) In support of this assertion, Defendants point to Plaintiff's December 21, 2017 email to Silverstein, in which they allege Plaintiff "requested a modified schedule not to care for her parents, but for her 'personal and wellness needs.'" (*Id.* at 6 (emphasis omitted) (quoting Decl., Ex. 7 (Emails), at PLAINTIFF 000219).) Defendants also rely on Plaintiff's December 28, 2017 email to Silverstein, in which she stated that she had "chosen not to share the details of the care [her parents] require because [she] didn't deem it appropriate," and that her "father is suffering from Stage 4 Cancer of the throat and mouth, which has spread to his lung and spine, and [her] mother, who has Primary Progressive Multiple Sclerosis, is unable to be

7

his primary caretaker." (*Id.*; *see also* Decl., Ex. 12 (Emails), at PLAINTIFF 000222). Defendants claim that this email, sent several hours after Plaintiff had already been terminated, was the first time that she disclosed her parents' disabilities to Defendants. (Defs.' Mem. at 6.) According to Defendants, if Plaintiff had already discussed her parents' condition with Silverstein, there would have been no need for her to provide such details in this email. (Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J., ECF No. 68, at 3.)

Meanwhile, Plaintiff claims that she disclosed her parents' disabilities to Silverstein during her December 21, 2017 performance review when she mentioned that her parents "are both sick and require care," and that her mother "has MS." (Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 66, at 9.) As evidence of such disclosure, Plaintiff refers to her comment in her December 21, 2017 email that she "know[s] [she] will soon regret not having as much time as possible with [her] family, as it's more serious than [she] allow[s] [her]self to express." (*Id.* at 10 (quoting Decl., Ex. 7 (Emails), at PLAINTIFF 000220).) Plaintiff argues that it "is obvious from this contemporaneous email that Plaintiff and Silverstein had discussed her parents' disabilities during the performance review." (*Id.*) She also claims that calendar invites, emails, and text messages from Plaintiff to Silverstein and another co-worker in November and December 2017 reference Plaintiff's need to take her father to doctors' visits, and that such evidence indicates that Defendants were on notice of her parents' disabilities even earlier than December 21, 2017. (*Id.*)

Upon review of the record, two things are clear: (1) there is a factual dispute as to when Plaintiff disclosed her parents' disabilities to Defendants, and (2) both Plaintiff and Defendants cannot be correct. It appears that either Plaintiff or Silverstein is misrepresenting whether Plaintiff discussed her parents' disabilities during her performance review. Plaintiff asserts that she

8

asserts that she specifically told Silverstein during the meeting that her parents have disabilities and require care. Silverstein insists just the opposite.

Although both parties claim that the December 21 and December 28 emails corroborate their versions of the story and preclude any other explanation, the emails do not clearly demonstrate whether it is Plaintiff or Silverstein who is telling the truth. For example, Plaintiff's December 21 email is fairly vague and does not definitively establish that her comments about her "personal and wellness needs" and that "it's more serious than [she] allow[s] [her]self to express" refer to disclosure of her parents' disabilities. Similarly, contrary to Defendants' assertions, Plaintiff's statement in her December 28 email that she had "chosen not to share the details of the care [her parents] require" is not necessarily a concession that she did not previously disclose her parents' disabilities. Accordingly, because there is a genuine issue of material fact as to whether Plaintiff disclosed her parents' disabilities prior to her termination, summary judgment is improper.

## IV. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANTS HAD LEGITIMATE BUSINESS REASONS FOR TERMINATING PLAINTIFF'S EMPLOYMENT

Under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), if a defendant articulates a legitimate, nondiscriminatory reason for its adverse employment action, any presumption of discrimination drops out of the analysis, and the defendant is entitled to summary judgment unless the plaintiff proffers evidence that reasonably supports a finding of prohibited discrimination. *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007) (citations omitted).

Here, Defendants claim that Plaintiff's termination from her employment had nothing to do with her parents' disabilities, and was instead appropriate disciplinary action in response to her

9

"job abandonment and other performance issues." (Defs.' Mem. at 1.) Specifically, they claim that Plaintiff was terminated after taking a three-day unscheduled and unapproved leave of absence from December 26, 2017 through December 28, 2017, failing to respond meaningfully to Silverstein regarding the issue with the cosmetics line website, and failing to improve upon work performance issues, including those that were discussed during her December 21, 2017 review. (*Id.* at 11–13.)

Plaintiff claims that Defendants' stated reasons for terminating her employment are pretextual and unsupported by the record. (Pl.'s Opp'n at 20.) With respect to her leave of absence in particular, she contends that her December 21 email demonstrates that she sought and obtained approval for those days off during her performance review. (*Id.* at 20–21.) She further asserts that Defendants "fabricat[e] Plaintiff's supposed history of poor performance" and engaged in "efforts to set Plaintiff up to fail to correct the issue with [the] website." (*Id.* at 22.)

Similar to the question of whether Plaintiff disclosed her parents' disabilities prior to her termination, the evidentiary record does not clearly establish whether Defendants had legitimate business reasons for firing Plaintiff. The record does not undisputably demonstrate whether Plaintiff requested certain days off during her performance review, and whether Silverstein granted such request. Plaintiff's December 21 email confirms neither Plaintiff's nor Silverstein's versions of their exchange during Plaintiff's review, and Silverstein's lack of response to her email provides no clarity as to why Plaintiff outlined in her email her schedule for the upcoming holiday week. Nor is there any written record of Plaintiff's performance review, and whether any particular alleged areas of deficiency were discussed during the review. Disputed facts exist that are dependent upon a determination of the parties' credibility. Because reasonable minds could differ as to whether Plaintiff had performance issues, whether Defendants raised concerns to Plaintiff

10

about such issues during her review or otherwise, and whether Plaintiff requested and obtained approval for her leave of absence, summary judgment is inappropriate.

## V. CONCLUSION

Defendants' motion for summary judgment, (ECF No. 61), is DENIED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      January 27, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge